UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SALLY JO LANDRUM , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:11-cv-00319-CAN |
| | ) | |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On August 11, 2011, Plaintiff, Sally Jo Landrum ("Landrum") filed her complaint in this Court. On January 27, 2012, Landrum filed an opening brief requesting this Court to reverse and remand this case for further proceedings consistent with the decision of this Court. On May 7, 2012, the Defendant, Social Security Administration ("SSA"), filed a response. On June 18, 2012, Landrum filed a reply. Pursuant to the consent of the parties and 28 U.S.C. § 636(c), this Court now enters its ruling based upon the record of this case which includes the pleadings, motions, administrative record, and the briefs of the parties.

**I.  PROCEDURE**

On August 31, 2006, Landrum filed an application for a period of disability and disability insurance benefits ("DIB"), alleging a disability beginning June 9, 2006. Landrum alleged the following impairments: shoulder pain, obesity, fibromyalgia, osteopenia, post surgery left tibia fibula fracture, non displaced fracture of the right fifth metatarsal, major depression, and dependent personality disorder with avoidance and schizoid features. Her claim was denied initially on November 1, 2006 and upon reconsideration on February 8, 2007. Landrum timely filed a Request for Hearing and the matter was heard before an administrative law judge

("ALJ"). On September 3, 2009, the ALJ issued a decision in which he found: (1) Landrum met the insured status requirements of the Social Security Act through December 31, 2011, (2) Landrum had not engaged in substantial gainful activity since the onset date of her alleged disability, (3) Landrum had the following severe impairments: fibromyalgia, osteopenia, and obesity, (4) Landrum did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. app. 1, subpart P. § 404., (5) Landrum retained the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. 404.1567(b) except that she has moderate inability to maintain attention and concentration for extended periods, (6) Landrum is unable to perform past relevant work, and (7) there are jobs existing in significant numbers in the national economy that that Landrum can perform. (Tr. 239-244). On June 9, 2011, the Appeals Council denied Landrum's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

## II. ANALYSIS

### A. Facts

#### 1. Physical Impairments

In October 2004, Dr. Joseph Bartush, M.D., referred Landrum to Dr. Steven Posar, M.D. for complaints of general achiness. Dr. Posar noted tenderness in numerous areas and diagnosed Landrum with fibromyalgia. In November 2005, Landrum underwent a sleep test administered by Dr. James Kozelka, M.D., Ph.D. She was diagnosed with moderate obstructive sleep apnea and moderate period leg movements during sleep. In November 2005, a follow up sleep study was performed with the use of a breathing aid that was found to have improved her symptoms.

In February 2006, Landrum was seen by Dr. Bartush for back pain, abdominal pain, and weight loss. In May 2006, she was seen for acute sinusitis and reported increasing pain in her shoulders and thighs. Her diagnoses included sinusitis and fibromyalgia. (Tr. 511). In July 2006, she complained of right shoulder pain and a rash on her hands. On physical exam of her right shoulder, she experienced pain when she raised her arm above 90 degrees. A second appointment in July 2006, revealed elevated blood sugars and continuous shoulder pain. An MRI revealed bursitis in the shoulder. Her diagnoses included diabetes mellitus, fibromyalgia, and right shoulder pain. (Tr. 509). Landrum was also seen in August and September of 2006 for follow up appointments regarding her weight and continued shoulder pain.

In November 2006, state agency physician Dr. J. Sands found that Landrum had no severe physical impairments. He found objective testing to be basically normal. He noted that the medical evidence showed a diagnosis of fibromyalgia. (Tr. 550). State agency Dr. Corcoran reviewed this decision and confirmed it as written.

In November 2006, Dr. Bartush performed a consultative exam at the request of the SSA. Landrum reported having pain in her joints and muscles that had been persistent for eight years, fatigue, and weakness. She was measured to be 4 feet, 11 inches tall with a weight of 151 pounds, giving her a BMI (body mass index) of 30 which is considered to be medically obese. She underwent lab work and a physical examination that revealed tenderness along both clavicles, sterna, and shoulders. Dr. Bartush found that Landrum had symptoms consistent with fibromyalgia. (Tr. 549). Dr. Bartush concluded that Landrum was obese and that if she did have fibromyalgia, even moderate physical effort would result in significant discomfort.

In January 6, 2007, Landrum fell and suffered a fracture of her left leg. (Tr. 619). She

received treatment at the LaPorte Hospital. Treatment notes indicate that she did well through therapy and was able to ambulate at the time of discharge with touch weight bearing of the left leg and crutches. After discharge, Landrum received follow up care for her leg fracture from Dr. Thomas Magill.

In January 2007, Landrum visited Dr. Magill. She was found to be doing satisfactorily, given a prescription for a wheelchair and a walker as per her request, and advised that she was to be seen back in one month, at which time they might be able to stop the walker. (Tr. 641-644). She was seen in April 2007, she was found to be doing satisfactorily. X-rays taken at that time showed excellent alignment of her fractured bones and it was noted that she was coming along nicely. During this time, Landrum also continued to see Dr. Bartush for follow up treatment for weight management and fibromyalgia.

In August 2007, Landrum was treated at Starke Memorial Hospital for a fractured toe. In October 2007, Landrum followed up with Dr. Magill. She reported that she had fractured her toe and had increased pain in the left leg fracture area. X-rays were taken and revealed no evidence of recurrent fracture. Landrum requested a prescription for a cane. (Tr. 641).

In April 2008, Landrum followed up with Dr. Magill. She reported that she was still using a cane because she had a fear of falling. (Tr. 642). She had tenderness in the area of the screw placement in her leg. Upon physical examination, there was no evidence of infection. *Id*. X-rays revealed that the rod was well placed and there was no evidence of hardware failure. *Id*. Dr. Magill found Landrum's leg was healing well. *Id*. Dr. Magill concluded that she likely had screw irritation. *Id*. In July 2008, Landrum returned to Dr. Magill with left shoulder pain. She was doing fairly well with arm function except when bringing her elbow away from her body.

4

An x-ray revealed acromioclavicular and shoulder arthritis. An MRI suggested rotator cuff tendonitis. Landrum was treated with a pain injection.

Landrum followed up with Dr. Magill in August and September of 2008. She reported that the pain injection had helped her and was prescribed physical therapy. She was advised to continue strengthening exercises because in the best of circumstances, it would take about six weeks for her rotator cuff to heal.

In October of 2007, Landrum was seen by Dr. Bartush and requested a bone scan. She expressed concerns about her bone density because she had broken two bones in a 7 month period. She reported having been diagnosed with osteopenia ten years prior. At that time, she had been prescribed calcium supplements and was later retested and advised that she was ok. (Tr. 731). On October 3, 2007, Landrum underwent a bone density scan and was found to have low bone density. Specifically, she was diagnosed with osteopenia. She also reported that her fibromyalgia had been terrible for the preceding two weeks and caused her difficulty sleeping.

### 2. Mental Impairments

In March and April of 2009, Landrum underwent psychological evaluations with a consultive psychologist, Robert Coyle, Ph.D. She reported that her sleep was poor, she spent approximately ten hours a night in bed, she woke up frequently with pain, and she had a suicide attempt by overdose at the age of seventeen. She denied any present thoughts of suicide. (Tr. 752).

In regards to her daily activities, Landrum reported that she continued to drive short distances, experienced extreme fatigue if she needed to drive more then twenty minutes, does most of her own laundry, could no longer climb stairs, cooked simple meals that were mostly

5

limited to packaged foods, did the dishes by hand a little at time due to fatigue, did some of the grocery shopping with her husband's assistance, was able to shower and dress independently, and relied on her husband to change the linens, vacuum, sweep, and clean the shower in their home. She also reported that she was active in church meetings and enjoyed singing at church. However, she had given up the activity of Sunday-school teaching because it became too overwhelming. She reported that she no longer had many friends. (Tr. 753-755). She also reported having memory problems.

Dr. Coyle administered a series of psychological tests as part of his psychological assessment of Landrum. He noted that she walked with a slight limp favoring her left leg, and her affect was clearly depressed and mildly anxious.

Dr. Coyle's intelligence testing indicated that Landrum had a low average full scale IQ of 91. (Tr. 754). From this, Dr. Coyle found that her memory problems were most likely not associated with intelligence and likely attributed to anxiety. (Tr. 758).

Furthermore, Dr. Coyle found Landrum to be highly depressed, socially withdrawn, distrustful of others, reacting with hysterics when dealing with stressful situations, and having difficulties with rational thought processes. (Tr. 756). Additional analysis revealed Landrum to be only mildly depressed.

Dr. Coyle also found Landrum to demonstrate a behavior pattern of submissive dependence, emotional blandness, sensitivity to rejection, avoidance of emotional contact, and isolating social detachment. His diagnosis was dependent personality disorder with avoidant and schizoid features. (Tr. 757). He found Landrum to be constantly in pain and exhausted . (Tr. 757-758). Landrum completed a self-evaluation questionnaire that showed moderately high scores

which Dr. Coyle determined to suggest a general anxiety disorder. *Id*.

Based on his findings, Dr. Coyle has found that Landrum has the following mental impairments: major depression with moderate severity and dependent personality disorder with avoidant and schizoid features. (Tr. 759). He assessed her with global assessment of functioning[1] ("GAF") score of 45 at that time. *Id*. His prognosis was poor to guarded.

**B.    Standard of Review**

The standard of review in disability cases limits this court to determining whether the final decision of the Commissioner is both supported by substantial evidence and based on the proper legal criteria. 42 U.S.C. § 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This court will conduct a critical review of the evidence, considering both the evidence that supports and detracts from the decision. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The decision can not stand if it lacks evidentiary support or an adequate discussion of the issues. *Id*.

As representative of the Commissioner's decision, an ALJ's opinion must explain his analysis of the evidence with specific detail and clarity to provide for appellate review by establishing a logical bridge between the evidence and his conclusions. *Haynes*, 416 F.3d at 626; *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994). This includes addressing uncontradicted

---

[1] Global Assessment of Functioning ("GAF") measurement of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000) (hereinafter "DSM-IV").

evidence that supports a claimant's disability. *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985).

A claimant's disability will only qualify for benefits if the claimant is found "disabled," under the SSA. 42 U.S.C. § 423(a)(1)(E). The SSA defines "disability" as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id. a*t § 423(d)(1)(A).

As set forth by the Social Security regulations, there is a sequential five-part test used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. This test requires the ALJ to consider whether: (1) the claimant is involved in substantial gainful activity; (2) the claimant has an impairment or combination of impairments that is severe; (3) the individual's impairment meets the severity of an impairment listed in the social security regulations as being so severe as to preclude substantial gainful activity; (4) the impairment precludes the claimant from doing past relevant work; (5) the national economy lacks a significant number of jobs that the claimant has the capacity to do. Id. The Claimant bears the burden of proof at steps one through four, after which the burden shifts to the Commissioner at step five. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either step three or step five. *Briscoe v. Barnhart*, 425 F.3d at 351-52. At step three, if the impairment meets any of the severe impairments listed in the Social Security Regulations, the impairment is acknowledged by the Commissioner and the claimant is found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ will assess the claimant's RFC to determine if the claimant can perform past work or other work available in

the national economy. 20 C.F.R. § 404.1520(e).

   C.   **Issues for Review**

The major issue that this court must resolve is whether the ALJ made a proper RFC determination. Specifically, Landrum contends that the ALJ made an improper RFC determination in regards to her physical and mental impairments because the ALJ discredited the opinion of Dr. Coyle and improperly evaluated her symptom testimony.

An individual's RFC demonstrates their ability to do physical and mental work activities on a sustained basis despite having limiting impairments. 20 C.F.R. § 416.945. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 U.S.C. § 416.946. The record includes the medical signs, diagnostic findings, the claimant's statements about the severity and limitations of medical impairments, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence in the record. SSR 96-7p 1996. Once a claimant has established an underlying physical or mental impairment that can reasonably be expected to produce the claimant's symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's ability to perform work related activities. *Id*. If testimony about the severity and limitations of a medical impairment is not substantiated by objective medical evidence, the ALJ must determine the credibility of the statements before him. *Id*.

   1.   **The ALJ properly evaluated the medical evidence and testimony provided by Dr. Coyle.**

Landrum contends that the ALJ improperly discredited Dr. Coyle's opinion. An ALJ is to

give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir.2000); 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p; S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); *Clifford*, 227 F.3d at 870. However, medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. *Id*. Nevertheless, an ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p.

In this case, the ALJ gave no weight to the opinion of Dr. Coyle for many reasons. Landrum argues that the ALJ has improperly found that: (1) Dr. Coyle relied on the subjective complaints of Landrum in making his assessments, (2) Dr. Coyle's prognosis of poor to guarded is disingenuous, (3) Dr. Coyle's determination of the onset date is inappropriate, (4) that there is no mention of mental impairments in the record with the exception of Dr. Coyle's report, and (5) she was referred to Dr. Coyle by her representative to indicate an attempt to add non-exertional limitations. Landrum also argues that the ALJ failed to consider important factors that are in favor of Dr. Coyle's testimony being given controlling weight in this case. This Court now addresses these arguments.

      **a.)**     **Subjective Complaints, Prognosis, and Onset Determination**

First, Landrum argues that the ALJ has improperly found that Dr. Coyle relied on the

subjective complaints of Landrum in making his assessments. Landrum contends that the ALJ has failed to consider the psychological testing performed by Dr. Coyle. This argument is an inaccurate assessment of the ALJ's opinion which stated that Dr. Coyle relied on numerous tests, Landrum's presentation, and Landrum's subjective complaints in forming his opinion. (Tr. 241). What the ALJ actually determined is that Dr. Coyle relied heavily on Landrum's subjective medical history in assessing a GAF score of 45, onset date in June 2006, and prognosis of poor to guarded. In support of his decision, the ALJ pointed out that Dr. Coyle's report did not indicate that he had reviewed Landrum's medical history. The ALJ further supported his decision by providing specific examples of inconsistencies between Dr. Coyle's report and the evidence in the medical record. For example, Dr. Coyle's report stated that Landrum was prescribed Cymbalta for treatment of fibromyalgia and depression when there is no evidence in the record indicating that Landrum had ever been diagnosed or treated for depression. (Tr. 241). Also, Dr. Coyle's report stated that Landrum had osteoporosis when the evidence in the record indicated that Landrum has been diagnosed with osteopenia and not osteoporosis. (Tr. 241). The ALJ also noted that a letter from Landrum's representative submitted on February 27, 2009 stating that there did not appear to be a psychiatric or psychological component to Landrum's case. The ALJ also pointed out that Landrum had even attempted to engage in treatment for any mental health disorder. *Id*. For these reasons, this Court finds that the ALJ has properly supported his conclusions by specifically citing to evidence in the record.

### b.) Record of Mental Impairments

Landrum argues that her history of taking antidepressant medications is sufficient evidence in the record to support the diagnoses and opinion of Dr. Coyle. However, the ALJ

asserted that there is no indication in the record of the prescribing physician that depression is a condition being treating with this medication. *Id.* The ALJ supported his decision by pointing out that Landrum's medical record contained no evidence that she had ever alleged depression or sought treatment for any mental impairment prior to her visit with Dr. Coyle. The ALJ also noted that, with the exception of Dr. Coyle's report, all mental references in the case record indicated that Landrum had demonstrated a healthy mental state. (Tr. 244, 524, 526, 928, 944, 620, 872, 829). Furthermore, medical evidence in the record showed that antidepressants were used for the treatment of fibromyalgia. (Tr. 113). For these reasons, this Court finds that the ALJ has properly supported his conclusions by specifically citing to evidence in the record

### c.) Non-Exertional Limitations

Landrum next argues that the ALJ improperly found that her being referred to Dr. Coyle by her representative after alleging no mental impairments, might indicate an attempt to add non-exertional limitations to her claims. While this line of analysis is subjective and not supported by specific evidence in the record, this Court finds that this error is harmless in light of the detailed explanation and abundant evidentiary support used to support the ALJ's credibility finding. *See Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000). (explaining that harmless error is neither material nor outcome determinative).

### d.) Checklist Factors

Lastly, Landrum argues that the ALJ has made a reversible legal error because he failed to consider important factors that were in favor of giving Dr. Coyle's opinion controlling weight in this case. Specifically, Landrum asserts that, unless a treating source's opinion is given controlling weight, the ALJ must consider "checklist factors" in determining the weight to be

given any medical opinion. Landrum cites a Seventh Circuit case in support of her argument. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

In *Larson v. Astrue*, the court held that the ALJ made a legal error by failing to give controlling weight to the opinion of a treating physician.[2] *Id*. The court further held that this error was reversible because once the proper weight was allotted to the physician's opinion the claimant was proven to be disabled under the social security guidelines. *Id*. The decision of the ALJ assigned 'some weight' to the treating physician's opinion without articulating any reason for doing so. *Id*. The court reasoned that an ALJ must consider the length, nature, extent of the treating relationship, frequency of examination, physician's specialty, types of tests performed, and the consistency and support of a physician's opinion in the record as factors in making a credibility determination. *Id*. The court further reasoned that the these factors were in favor of the physician's credibility because he had treated the claimant for several years on a monthly basis, he was a psychiatrist and not psychologist, and his opinion was consistent with the evidence in the record. *Id*.

This case is not like *Larson v. Astrue* because, unlike the physician in Larson, Dr. Coyle is not a treating physician. An ALJ does not have to explain the reasons for the weight that he gave to a nontreating source's opinion, instead he need only have considered the opinion, which

---

[2] A treating physician or source means a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient. An ongoing treatment relationship is established when medical evidence shows that the patient has seen the source with a frequency that is consistent with the accepted medical practice for the type of treatment and/or evaluation required for the medical condition(s). *See* 20 C.F.R. § 416.902
A non-treating physician/source means a physician, psychologist, or other acceptable medical source who has examined a claimant but does not have, or did not have, an ongoing treating relationship with the claimant. The term includes a consultive medical examiner. *Id.*

the ALJ did here. *See* 20 C.F.R. § 416.927; *Doyal v. Barnhart*, 331 F.3d 758, 762-64 (10th Cir. 2003); *McTaggart v. Astrue*, 342 Fed. Appx. 373, 374-5 (10th Cir. 2009). Here, the ALJ pointed out that Dr. Coyle is not a treating physician and has not engaged in mental treatment with Landstrum. Furthermore, the ALJ pointed out that Dr. Coyle's specialty is psychology and Dr. Coyle is not a medical doctor. Also, the ALJ has provided specific examples demonstrating that Dr. Coyle's opinion is neither consistent with nor supported by the evidence in the record. The ALJ made it clear that he gave no weight to Dr. Coyle's opinion and he has articulated specific reasons for doing so[3]. For these reasons, this Court finds that the ALJ has properly supported his conclusions by specifically citing to evidence in the record

For the forgoing reasons, this Court finds that the ALJ has properly evaluated the medical opinion and testimony of Dr. Coyle. The ALJ has found Dr. Coyle's opinion to be neither supported by nor consistent with the medical evidence in the record. The ALJ has supported his conclusions by specifically citing to evidence in the record. The ALJ has assigned no weight to Dr. Coyle's opinion and the reasons for that weight have been made clear. Therefore, the ALJ has met the required threshold for discounting Dr. Coyle's opinion. *See* 20 C.F.R. § 404.1527(d)(2). This Court finds that the ALJ's credibility determination must stand.

        **2.**        **The ALJ properly evaluated the symptom testimony of Landrum**.

SSR 96-7p states that there is a two step process that an ALJ must engage in when

---

[3] The ALJ noted specific inconsistencies between Dr. Coyle's report and the evidence in the record such as Dr. Coyle's claims that Landrum was prescribed Cymbalta for treatment of fibromyalgia and depression when there is no evidence in the record indicating that Landrum had ever been diagnosed or treated for depression. (Tr. 241). Dr. Coyle's report also stated that Landrum had osteoporosis when the evidence in the record indicated that Landrum had been diagnosed with osteopenia. (Tr. 241). See infra p 11-12.

determining the credibility of a witness's testimony. First, the ALJ must determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the individual's pain or other symptoms. SSR 96-7p. Second, once an underlying physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the individual's ability to work. *Id.* Whenever an individuals's statements about the symptoms and limitations of their impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on consideration of the entire case record. *Id.*

An ALJ's decision regarding a claimant's credibility must contain specific reasons for the finding on credibility, be supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id.*

In determining the credibility of Landrum's symptom testimony in regards to her physical impairments, the ALJ concluded that her medically determined impairments could reasonably be expected to cause the symptoms alleged in Landrum's testimony. However, the ALJ found that her testimony concerning the limiting effects of these symptoms was not credible because it was inconsistent with the medical evidence in the record. (Tr. 243). While this is boilerplate language, the ALJ has supported his decision by finding that there is no medical evidence in the record to support that a cane was necessary to assist Landrum in walking. The ALJ's decision corresponds with the medical evidence in the record indicating that Landrum had

15

normal gait. (Tr. 95, 507, 512, 549, 731, 735). Specifically, the ALJ pointed out that Landrum's treating physician, Dr. Bartush, noted her gait was within normal limits a few months after her fracture in October 2007. (Tr. 243). Landrum's request for a cane to assist her walk because she alleged a fear of falling does not demonstrate objective medical evidence to support her testimony. Because Landrum's testimony about the severity and limitations of her physical impairments was not substantiated by objective medical evidence, the ALJ properly determined her credibility.

Furthermore, Landrum testified that she had a nervous condition and depression for 10 years prior to appearing before the ALJ that makes it difficult for her to leave her room. Landrum contends that she has been taking antidepressant medications for many years and that this was sufficient medical evidence to support her symptom testimony. However, the ALJ discredited her testimony finding insufficient evidence in the record to support her claims. Specifically, the ALJ found that the use of antidepressant medication was insufficient evidence to establish the existence of a mental impairment because antidepressant medication was only for the treatment of her fibromyalgia. The ALJ properly supported his determination by citing the absence of any mention of mental impairments by Landrum's treating physician, Dr. Bartush, and all other records in the file with the exception of Dr. Coyle. In addition, the ALJ also noted that all references to Landrum's mental status indicated that she has been routinely diagnosed with a normal mental status. (Tr. 244, 524, 526, 928, 944, 620, 872, 829). The ALJ further supported his determination by the fact that Landrum neither alleged nor sought treatment for any mental impairments prior to her psychological assessments with Dr. Coyle. Moreover, the ALJ cited a letter from Landrum's representative submitted on February 27, 2009 stating that

there does not appear to be a psychiatric or psychological component to Landrum's case (Tr. 241).

Because Landrum's testimony about the severity and limitations of her mental impairments is not substantiated by objective medical evidence, the ALJ has properly made a determination regarding the credibility of her statements before him. Because the medical evidence does not support Landrum's allegations, the ALJ has properly rejected her testimony as not credible and articulated specific reasons for doing so. The ALJ's reasons are properly supported by record evidence and are sufficiently specific to make clear, to both the individual and any subsequent reviewers, the weight given to the individual's statements and the specific reasons for that weight. For this reason, this Court finds that the ALJ's credibility determination must stand.

### III. CONCLUSION

This Court concludes that the ALJ made a proper RFC determination in this case. The ALJ's credibility determination in regards to the opinion of Dr. Coyle and the testimony of Landrum was both proper and supported by substantial evidence. Therefore, Landrum's motion for reverse or remand is **DENIED**. [Doc. No. 21] This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 10th day of July, 2012.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge